UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH ELIZABETH SMITH,<br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14 C 8345<br><br>Magistrate Judge M. David Weisman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sarah Elizabeth Smith brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 421, 423. (Compl.) Plaintiff filed a motion for summary judgment (Pl.'s Mot.) and a Memorandum in support of reversing and remanding the decision of the administrative law judge (Pl.'s Mem.). The Commissioner filed a cross-motion for summary judgment (Def.'s Mot.) and supporting memorandum (Def.'s Mem.), and Plaintiff replied (Pl.'s Reply.). The parties consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion is granted, and Defendant's motion is denied.

## PROCEDURAL HISTORY

Plaintiff filed her application for benefits on June 28, 2012, alleging a disability onset date of January 1, 2009. (R. 169.) Her application was denied on August 24, 2012 and again after reconsideration on January 22, 2013. (R. 110-14.) On February 5, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 115-16.) On November 13, 2013,

Plaintiff, represented by counsel, appeared and testified at the hearing. (R. 36-76.) A vocational expert also testified. (*Id.*) On January 31, 2014, the ALJ denied Plaintiff's application for benefits. (R. 18-35.) Plaintiff requested review of the ALJ's decision by the Appeals Council (R. 13), but her request was denied (R. 1), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## BACKGROUND

Plaintiff suffers from bipolar disorder, anxiety, obsessive-compulsive disorder ("OCD"), and borderline personality disorder. (R. 407-09, 424.) Plaintiff has seen a psychiatrist and therapist for more than ten years and takes numerous medications to help stabilize her mood. (R. 55-57, 1091.)[1] At the time of the hearing, Plaintiff was thirty-two years old and had been living with her partner for the last four years. (R. 40.) Plaintiff has Associate's Degrees in Liberal Arts and Health Management, respectively, and withdrew from Northern Illinois University in 2003 for medical reasons. (R. 40-41.) Plaintiff's past employment experience included work as a stocker and as a sales associate. (R.44-46.) At the time of the hearing, Plaintiff was working 13 hours a week as a computer and magazine assistant at the library. (R. 42.)[2]

---

[1] At the hearing before the ALJ, Plaintiff listed several of the medications she was taking which were prescribed by her psychiatrist. (R. 56.) They include: Oxcarbazephine (an anticonvulsant used to treat seizures), Divalproex ER (used in the treatment of manic episodes associated with bipolar disorder), Venlafaxine ER (an antidepressant), Lorazepam (used to treat anxiety disorders) Trazodone (an antidepressant used to treat major depressive episodes), Benztropine (used for control of drug-induced extrapyramidal reactions), and Risperidone (an antipsychotic). (*Id.*) *Dorland's Illustrated Medical Dictionary* 209, 558, 1074, 1355, 1650, 1957, 2046 (32nd ed. Elsevier Saunders 2012) [hereinafter *Dorland's*].

[2] Per a doctor's note, Plaintiff was restricted to working no more than 17 hours per week. (R. 43.)

# THE DISABILITY DETERMINATION PROCESS

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if she has not performed any substantial gainful activity, whether the claimant has a severe impairment or combination of impairments; (3) if the claimant has a severe impairment, whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe and of such duration as to preclude substantial gainful activity; (4) if the impairment does not meet or equal a listed impairment, whether the claimant retains the residual functional capacity to perform her past relevant work; and (5) if the claimant cannot perform her past relevant work, whether she is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

An affirmative answer at steps one, two, or four leads to the next step. *Zurawski*, 245 F.3d at 886. An affirmative answer at steps three or five requires a finding of disability, whereas a negative answer at any step other than step three precludes a finding of disability. *Id*. The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the

Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. *Id*.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2009, noting that earning records from Plaintiff's part-time job show less than substantial gainful activity. (R. 20.) At step two, the ALJ determined that Plaintiff has the severe impairments of bipolar disorder, OCD, anxiety, and borderline personality disorder. (*Id.*) At step three, however, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d)) of the regulations. (R. 21-22.)

At step four, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to "perform a full range of work at all exertional levels," except that she can only understand, remember, and carry out simple, routine, repetitive tasks; can endure only occasional interaction with supervisors and non-collaborative interaction with co-workers; can have no direct contact with the public; and must avoid all work requiring a fast pace or strict production quotas. (R. 22-28.) At step five, the ALJ determined that Plaintiff is unable to perform any of her past relevant work, but that there are jobs in the national economy that she can perform. (R. 28-30.) Accordingly, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. (R. 30.)

## STANDARD OF REVIEW

The Social Security Act provides for limited judicial review of a final decision of the Commissioner. *See* 42 U.S.C. § 405(g). Where the Appeals Council declines a requested review of an ALJ's decision, the ALJ's decision constitutes the Commissioner's final decision. *Villano*, 556 F.3d at 561-62. While an ALJ's legal conclusions are reviewed *de novo*, her factual determinations are reviewed deferentially and are affirmed if they are supported by substantial evidence in the record. *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Evidence is substantial if it is sufficient for a reasonable person to accept it as adequate to support the decision. *Jones*, 623 F.3d at 1160; *Craft*, 539 F.3d at 673. "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the decision lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When evaluating a disability claim, the ALJ must consider all relevant evidence and may not select and discuss only the evidence that favors her ultimate conclusion. *See Murphy v. Astrue*, 496 F.3d 630, 634-35 (7th Cir. 2007); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Although the ALJ is not required to discuss every piece of evidence, the ALJ must provide an accurate and logical bridge between the evidence and the conclusion, so that a reviewing court may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review. *Craft*, 539 F.3d at 673. "If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded." *Villano*, 556 F.3d at 562.

**DISCUSSION**

Plaintiff argues that the ALJ erred in: (1) ruling that Plaintiff's impairments do not meet or equal a listing; (2) establishing Plaintiff's RFC; (3) determining Plaintiff's credibility; and (4) in eliciting testimony from the vocational expert. (Pl.'s Mem. at 6-15.) Plaintiff alleges that these errors flow in part from the ALJ's failure to give controlling weight to the opinions of her treating psychiatrist, Dr. Anjum Khatoon. (Pl.'s Mem. at 11-12.) Defendant responds by stating that substantial evidence supports: (1) the ALJ's determination that Plaintiff's impairments do not meet a listing; (2) the ALJ's RFC finding; (3) the ALJ's credibility determination; and (4) the hypotheticals the ALJ posed to the vocational expert. (Def.'s Mem. at 2-14.) An examination of the parties' briefs and the available records reveals that the ALJ erred in her evaluation of the medical source opinion evidence. Therefore, the case is remanded with instructions.

**Treating Physician's Opinion**

Plaintiff asserts that the ALJ's assessment of her RFC is flawed, in part because the ALJ failed to provide "substantial evidence" and "good reasons" for giving less than controlling weight to the opinions of Plaintiff's treating psychiatrist, Dr. Anjum Khatoon. (Pl.'s Mem. at 11-12.) Defendant argues that the ALJ did not reject Dr. Khatoon's opinion solely because of the opinions of the non-examining medical consultants, but also because Plaintiff's activities and Dr. Khatoon's treatment notes did not support the limitations in Dr. Khatoon's assessment. (Def.'s Mem. at 10.)

The treating physician rule dictates that, in Social Security disability claims, the opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a

treating doctor's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) an ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel,* 345 F.3d at 470.

Social Security Regulations require an ALJ to evaluate every medical opinion she receives. 20 C.F.R. § 404.1527(c). If the opinion of a treating physician is not afforded controlling weight, the ALJ must then decide what weight to give to each available medical opinion, considering such factors as the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the type of tests performed; and the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c); *Scott,* 647 F.3d at 740. The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011). Further, the opinions of non-examining sources generally do not carry significant weight in comparison to those of treating sources. 20 C.F.R. § 404.1527(c)(2); *see McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011).

The record shows that, since 2005, Plaintiff has received ongoing mental health treatment through the DuPage County Health Department's Southeast Public Health Center ("Center"). (R. 860, 1091.) Since 2008, Plaintiff's course of treatment has included approximately monthly visits with a doctor or psychiatric nurse for evaluation and medication management. (*See, e.g.*, R. 328-29, 346-47, 386, 352, 544.) Most recently, Plaintiff's treating psychiatrist has been Dr. Anjum Khatoon, who has seen Plaintiff approximately monthly since December 2011. (R. 376, 381, 386, 391, 396, 401, 738, 743, 748, 753, 758, 910, 915, 920, 925, 935.) In addition to her ongoing psychiatric care and medication management, Plaintiff also receives counseling at the

Center. She has seen the same therapist, Certified Mental Health Professional Nancy Myers, approximately twice each month since 2008. (R. 430-31, 888, 1091.)

Dr. Khatoon and Ms. Myers jointly signed opinion letters regarding Plaintiff's impairments in August 2012, April 2013, and October 2013. (R. 407-10, 764-65, 1091-92.) The narrative portion of each letter describes Plaintiff's symptoms, diagnoses, ongoing treatment history, treatment side effects, and prognosis. (*Id.*) In the first opinion letter, the psychiatrist and therapist characterized Plaintiff's impairments as "chronic, treatment-resistant, and incurable." (R. 409.) With the second letter, the two treatment providers also included a Mental Medical Source Statement ("MSS") form which they both signed. (R. 766-68.) On the form, Dr. Khatoon and Ms. Myers assessed Plaintiff as either "unable to meet competitive standards" or as having "no useful ability to function" in thirteen of sixteen listed "Mental Abilities and Aptitudes Needed to Do Unskilled Work." (R. 766.) They assessed Plaintiff at those same levels for all four of the listed "Mental Abilities and Aptitudes Needed to Do Semiskilled and Skilled Work" and found she has "no useful ability to function" in any of the five listed "Mental Abilities and Aptitudes Needed to Do Particular Types of Jobs." (R. 767.)

The record contains three additional medical opinions. The first is a report from a psychological examination performed by a consultative examiner, psychologist John L. Peggau, Psy.D. on August 17, 2012. (R. 652-56.) Dr. Peggau interviewed Plaintiff for forty minutes and read two pages of her disability report, but he did not have access to her extensive mental health treatment records. (R. 652.) After the interview, he concluded that Plaintiff meets the diagnostic criteria for bipolar disorder type I, an unspecified anxiety disorder, and a personality disorder with borderline features. (R. 655.) He also reported that Plaintiff demonstrated "below average"

memory and concentration, despite putting forth her "best effort." (*Id*.) Dr. Peggau made no assessment of Plaintiff's RFC.

On August 23, 2012, agency reviewing physician Dr. Terry A. Travis reviewed Plaintiff's record and completed a Mental Residual Functional Capacity Assessment as part of Plaintiff's initial denial of benefits. (R. 77-85.) Dr. Travis's findings were sharply at odds with the MSS provided by Plaintiff's psychiatrist and therapist. (R. 82-83.) For example, Dr. Travis found Plaintiff "moderately" limited in her ability to "complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 83.) On the other hand, Plaintiff's treatment providers found that she has "no useful ability" to complete a normal workday or workweek without interruptions and opined that she is "unable to meet competitive standards" in performing at a consistent pace without an unreasonable number of rest periods. (R. 766.) Similarly, Dr. Travis found Plaintiff was "not significantly limited" in her ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," while her treating providers found Plaintiff has "no useful ability to function" in those areas. (R. 83, 767.) Dr. Travis rated Plaintiff as "moderately limited" in six of the sixteen listed work-related mental capacities, and found her "not significantly limited" or showing "no evidence of limitation" in the remaining ten capacities. (R. 82-83.) On January 13, 2013, Dr. Donald Henson, Ph.D. completed a similar review and assessment and arrived at findings identical to those of Dr. Travis. (R. 87-97.)

In her decision, the ALJ referenced Dr. Khatoon's notes from August 2012 to determine Plaintiff's severe impairments. (R. 20.)[3] When determining Plaintiff's RFC later in her decision,

---

[3] The ALJ describes these notes as a letter "dated April 10, 2012" submitted by Dr. Khatoon. (R. 20.) The record does not contain a letter bearing that date. Based on the pages cited, the ALJ

9

the ALJ summarized the providers' April 2013 letter and MSS stating, "Dr. Khatoon's opinion is not given controlling weight, despite his status as a treating physician." (R. 27.) Instead, she gave "lesser weight" to the treating physician's findings. (*Id*.) As justification, the ALJ cited "inconsistencies with other opinion evidence in the file," and noted that Plaintiff's activities and Dr. Khatoon's treatment notes indicated that Plaintiff's restrictions are not as severe as the doctor opined. (R. 27-28.) As to the "other opinion evidence in the file," the ALJ afforded "some weight" to the opinion of agency reviewing physicians Dr. Travis and Dr. Henson. However, the ALJ attributed greater limitations to Plaintiff than Drs. Travis and Hanson did, based on the treatment records. (R. 27.) The ALJ did not weigh the opinion of Dr. Peggau, who provided no RFC assessment.

Because the opinion of a non-treating source does not, by itself, suffice to discount the opinion of a treating physician, *Gudgel,* 345 F.3d at 470, the ALJ was required to provide other "good reasons" before weighting the conclusions of Drs. Travis and Henson more heavily than those of Dr. Khatoon. *Campbell*, 627 F.3d at 306. The reasons provided by the ALJ, however, do not meet this standard. The ALJ found that Plaintiff's activities and her doctor's corresponding treatment notes did not support the "degree of dysfunction" alleged in the opinion. (R. 27.) As evidence, she cites a treatment note from May 2013 when Plaintiff indicated that she felt "less anxious" and had a "level mood," and a second treatment note that indicated she had "no manic symptoms" in July 2013, though she reported feeling "stressed" and was picking at her nails more. (R. 28 (citing R. 925, 930).) Yet in her next visit to Dr. Khatoon on September 17, 2013, Plaintiff again reported that she was stressed, picking at her nails more, was

---

appears to be referring to the August 10, 2012 report jointly issued by Dr. Khatoon and Ms. Myers. (R. 20, citing R. 407-10.)

experiencing "creepy crawly" sensations on her skin, and had recently been unable to make it through her four-hour shift at work, needing to leave early because of her symptoms. (R. 935.)

As the Seventh Circuit has repeatedly explained, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710 (citations omitted). Bipolar disorder, in particular, is a chronic and episodic disease; patients frequently respond erratically to treatment. *See Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008). "The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better . . . does not imply that the condition has been treated." *Scott,* 647 F.3d at 740 (citations omitted).

Here, Dr. Khatoon's treatment notes show that both Plaintiff's mood and her anxiety symptoms have fluctuated significantly over time. For example, in January 2013 she was "a little manic" and irritable, in February she was depressed, and in April she was struggling with anxiety and picking her fingers to the point of bleeding. (R. 910, 915, 920.) The effectiveness of her medications also seems to wax and wane, as do various side effects from those medications including grogginess, weight gain, a "crawly" sensation on her skin, and hair growth on her body. (*See, e.g.,* R. 376, 381, 386, 391, 920, 935.) Therefore, in citing a few days where Plaintiff reported no symptoms of depression or mania, the ALJ has done little to support her contention that Plaintiff's "degree of dysfunction" is less than that described in the opinion letters. Rather, the ALJ has identified periods of time in which Plaintiff's symptoms have "waxed and waned," which is not inconsistent with the overall diagnosis made by Dr. Khatoon. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Other inconsistencies cited by the ALJ to justify her rejection of Dr. Khatoon's opinions similarly fail to persuade. The ALJ wrote that the "consultative examiner did not note any manifestations of OCD symptoms while examining her for 40 minutes." (R. 26.) Yet there is ample medical evidence to support findings of anxiety and OCD symptoms. For example, one of Plaintiff's recurrent symptoms, picking her nails and skin, is documented throughout her treatment records. Plaintiff dealt with periods of this behavior in 2008, when she reportedly picked at her nails for "emotional release," leading to "bleeding and scarring," (R. 495, 523); in May and June 2010 (R. 518, 562); again in 2011 (R. 413, 603); for several months in 2012, to the point of picking off five of her fingernails entirely (R. 334-35, 338-39, 349, 396, 743); and again in 2013 (R. 1062, 1078). The fact that Plaintiff's picking and other symptoms of anxiety and OCD sometimes improve, and that she was able to refrain from them during her consultative exam, does not belie their existence or severity. The ALJ's reliance on Plaintiff's behavior during a single, 40 minute consultative examination to discount the opinion of her treating physicians constitutes the sort of "sound-bite approach" that is an impermissible means of evaluating evidence. *Scrogham v. Colvin* 765 F.3d 685, 698 (7th Cir. 2014); *see Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (remanding a denial of benefits based on "cherry-picking of the medical record").

The ALJ also discounted Dr. Khatoon's opinion because she found it to be inconsistent with Plaintiff's work history. (R. 27.) The ALJ notes, "Despite Dr. Khatoon's opinion that the claimant cannot accept instruction from supervisors or get along with coworkers, the claimant's work history supports the ability to do both." (R. 28.) In arriving at this conclusion, the ALJ does not explain how she evaluated the evidence from Plaintiff's employer. On August 21, 2013, the director of the library where Plaintiff worked submitted a letter explaining the

accommodations Plaintiff received while working for the library which included working a limited part-time schedule with no morning shifts. (R. 283.) The letter also notes the difficulties Plaintiff has with her work. (*Id.*) Some of those challenges were "trouble maintaining basic social interaction with patrons and staff including approaching her supervisor for instruction and clarification." (*Id.*) The director also stated that Plaintiff was working "to her maximum ability" and that she would not be successful working more hours. (*Id.*) The ALJ did not address Plaintiff's October 10, 2013 performance review, which indicated that Plaintiff had arrived late or asked to leave early five times since July. (R. 285-88.) The ALJ also did not explain how she evaluated Plaintiff's work abilities in light of the uncontroverted testimony of Plaintiff, her partner, and her therapist that, while at work, Plaintiff frequently contacts her mother and her partner for emotional support. (R. 47, 291, 1091.) The ALJ has failed to provide "good reasons" for her decision to give less than controlling weight to treating physician, Dr. Khatoon.

Even if an ALJ articulates good reasons for giving less than controlling weight to the opinion of a treating physician, she is required to explain how she weighed that opinion in light of the prescribed regulatory factors, including the nature, length, and extent of any treatment relationship; the specialization of the doctor; and consistency with the record as a whole. 20 C.F.R. § 404.1527(c); *Larson,* 615 F.3d at 751. Here, the ALJ gave scant attention to the regulatory factors in addressing Dr. Khatoon's opinion. The ALJ acknowledged the existence of a treatment relationship, but failed to consider Dr. Khatoon's specialization as a psychiatrist, the nature and extent of the doctor's treatment relationship with Plaintiff as her prescribing psychiatrist through many medication changes, or the length and frequency of treatment. The ALJ also overlooked significant evidence that showed consistency between Dr. Khatoon's opinions and the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4). For example, therapy notes

13

from August and September 2013 indicate that Plaintiff went ten days without showering, was not sleeping at night, had been late for work twice, was experiencing anxiety, and had twice experienced bladder incontinence. (R. 1064, 1078, 1082, 1086, 1091.) In sum, though the ALJ did explicitly ascribe "less weight" to Dr. Khatoon's opinions, she failed to provide the required "sound explanation" for doing so. *See Punzio,* 630 F.3d at 710.

Additionally, the ALJ ignored that Dr. Khatoon's opinions were co-signed by Plaintiff's therapist, Ms. Myers. Consequently, the ALJ provided no evaluation of those opinions or Plaintiff's five-year treatment relationship with Ms. Myers. While the opinions of non-physician medical sources like therapists do not suffice to establish a diagnosis and do not merit controlling weight, an ALJ may consider such sources to determine the severity of a claimant's impairments and their effects on the claimant's work capacities. 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939 at *2; *Voigt v. Colvin,* 781 F.3d 871, 878 (7th Cir. 2015). The opinions of non-physician medical sources are weighed using the same regulatory factors applicable to those of physicians. 20 C.F.R. § 404.1527(c); SSR 06-03p, 2006 WL 2329939 at *4-5; *see Williams v. Colvin,* No. 14 C 3222, 2015 WL 9460243 (N.D. Ill. Dec. 28, 2015). Given Ms. Myers' five-year treatment relationship with Plaintiff, encompassing bimonthly visits at which they discussed the day-to-day impacts of Plaintiff's impairments and developed strategies for coping with and minimizing her symptoms, Ms. Myers' opinions are likely to shed light on the severity of Plaintiff's impairments. The ALJ's failure to explain or even mention her rejection of Ms. Myers' opinions in light of that treatment relationship was also erroneous. On remand, the ALJ should evaluate Ms. Myers as an "other source" as mandated by SSR 06-03p and determine what weight her opinions deserve in light of the factors set forth in 20 C.F.R. § 404.1527(c). *See Tharpe v. Colvin*, No. 14 C 5641, 2015 WL 4653228, at *3, n.42 (N.D. Ill. Aug. 6, 2015).

**Plaintiff's Additional Arguments**

The ALJ's flawed evaluation of the medical evidence requires remand for a re-assessment of Plaintiff's RFC, as described above. On remand, a proper evaluation of the medical evidence may also impact the ALJ's step three listings analysis and her analysis of Plaintiff's credibility. In assessing Plaintiff's credibility, the ALJ is advised to consider the entire record, including Plaintiff's longitudinal treatment history and numerous medication changes, in accordance with SSR 96-7p.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [11] is granted, and the Commissioner's motion for summary judgment [19] is denied. The case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. Judgment is entered in favor of the Plaintiff and against the Commissioner.

**SO ORDERED.**   **ENTERED:** July 7, 2016

_____
**M. David Weisman**
**United States Magistrate Judge**